UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GUILLERMINA AMIGON CARDONA,

        Petitioner,

v.

UNKNOWN PARTY #1 et al.,

        Respondents.
_____/

Case No. 1:25-cv-1287

Honorable Jane M. Beckering

## **OPINION**

Petitioner Guillermina Amigon Cardona initiated this action on October 23, 2025, by filing a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) Petitioner is presently detained by the United States Immigration and Customs Enforcement (ICE) at the North Lake Processing Center (North Lake) in Baldwin, Lake County, Michigan.

Petitioner challenges the lawfulness of her current detention and asks the Court for the following relief: assume jurisdiction over this matter; issue an order to show cause ordering Respondents to show cause why this petition should not be granted within three days; declare that Petitioner's detention without an individualized determination violates the Due Process Clause of the Fifth Amendment; declare that Petitioner's detention was made in violation of statute and regulation; declare that the continued detention of Petitioner lacks statutory authorization; issue a writ of habeas corpus requiring Respondents to release Petitioner immediately; issue an order prohibiting Respondents from transferring Petitioner from the district without the Court's approval; and award Petitioner reasonable attorneys' fees and costs. (Pet., ECF No. 1, PageID.8–9.)

In an Order (ECF No. 3) entered on October 28, 2025, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. Respondents filed their response (ECF No. 5) on October 31, 2025. Petitioner filed a reply (ECF No. 6) on November 6, 2025. For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.   Factual Background

Petitioner is citizen of Mexico. (Pet., ECF No. 1, PageID.4.) She entered the United States in or around December 2023, seeking asylum. (*Id.*) On December 1, 2023, Petitioner applied for admission into the United States. (Hughley Decl. ¶ 4, ECF No. 5-1, , PageID.37) On December 1, 2023, United States Customs and Border Patrol charged Petitioner with inadmissibility pursuant to § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because she was not in possession of valid immigration and travel documents; she was paroled into the United States for a period of one year. (*Id.* ¶ 5, PageID.37–38.) Since that time, Petitioner has resided in the United States with her now 11-year-old son as his sole financial support. (*Id.*, PageID.1, 4.) She has no criminal history. (*Id.*)

On October 7, 2025, ICE encountered and arrested Petitioner near Chicago, Illinois. (Hughley Decl., ECF No. 4-1, ¶¶6–7, PageID.38.) ICE placed Petitioner into removal proceedings because Petitioner "is an arriving alien who applied for admission but was determined to be inadmissible by an immigration officer." (*Id.* ¶¶ 8–9, PageID.38.) Petitioner has not been given a bond hearing. (*Id.* ¶ 7, PageID.41; Pet., ECF No. 1, PageID.2.)

### II.   Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

Const., Art I, § 9, cl. 2). The primary habeas corpus statute, 28 U.S.C. § 2241, confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." This includes challenges by non-citizens in immigration related matters. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)

### III.    Exhaustion

Respondents first contend that this Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted her administrative remedies. (Resp., ECF No. 5, PageID.16–19.) Specifically, Respondents argue that Petitioner has not requested a bond hearing. (*Id.*, PageID.16.) They claim that "[s]hould he [sic] request and the court grant a hearing, he [sic] would have the right to appeal any unfavorable decision to the Board of Immigration Appeals (BIA)." (*Id.*) Petitioner contends that exhaustion is not required and that "[a]ny appeal to the BIA is futile." (Reply, ECF No. 6, PageID.41.)

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). This discretion is referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citation omitted), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *See Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d

3

1241 (9th Cir. 1983)," to determine whether prudential exhaustion should be required. *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). Under this three-factor test ,

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should not be required in Petitioner's case. First, the central question presented by Petitioner's § 2241 petition is whether 8 U.S.C. § 1225 or 8 U.S.C. § 1226 applies to Petitioner. That determination relies upon a purely legal question of statutory interpretation and does not require the record that would be developed should the Court require Petitioner to exhaust her administrative remedies. Moreover, this Court is not bound by and is not required to give deference to any agency interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

Second, Petitioner's constitutional challenge to her detention does not require exhaustion. The Sixth Circuit has noted that due process challenges, such as the one raised by Petitioner, which are not premised on "correctable procedural errors," generally do not require exhaustion because the BIA cannot review constitutional challenges. *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th

Cir. 2006). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that § 1225(b)(1)(A) applies to all aliens who have resided within the United States prior to their arrest and detention. Notably, the BIA recently proclaimed that any individual who has ever entered the United States unlawfully and was later detained is no longer eligible for bond and is subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025). It is simply unlikely that any administrative review by the BIA would lead to the Government changing its position and precluding judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4. A court may choose to rule upon the merits of the issues presented when the "legal question is 'fit' for resolution and delay means hardship." *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, there is no question that, given the Government's position and the BIA's recent decision in *Yajure Hurtado*, requiring Petitioner to exhaust her administrative remedies and request a bond hearing would be futile. Additionally, the question of whether Petitioner is entitled to a bond hearing is a purely legal question fit for resolution before this Court. And finally, it is unmistakable that "depriving [Petitioner] of [her] liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alterative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## IV.    Merits Discussion

### A.    Petitioner's Detention Is Governed by § 1226.

Petitioner contends that Respondents have violated the INA by concluding that Petitioner is detained pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(2). (Pet., ECF No. 1, PageID.3.) According to Petitioner, noncitizens "who previously entered and are now residing in the United States are detained pursuant to 8 U.S.C. § 1226(a)." (*Id.*) Respondents, however, contend that Petitioner "unambiguously meets every element for detention under § 1225(b)(2)," and that "even if the text of § 1225(b)(2) were ambiguous, its structure and history support the agency's interpretation of the statute." (Resp., ECF No. 4, PageID.21.) To address the Parties' arguments, the Court must examine the two primary statutory provisions at play: 8 U.S.C. § 1225 and § 1226.

Section 1225(b)(2)(A) provides that

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title

8 U.S.C. § 1225(b)(2)(A).

Section 1226(a), on the other hand, "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). It states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

> Except as provided in subsection (c)[1] and pending such decision, the Attorney General
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) conditional parole . . . .

8 U.S.C. § 1226(a).

Both provisions govern the detention of noncitizens pending removal proceedings; the critical difference is that § 1225 provides for mandatory detention, while § 1226 allows for the release of the noncitizen on conditional parole or bond. For the following reasons, the Court finds that Petitioner's detention is governed by § 1226.

Respondents contend that Petitioner is detained pursuant to § 1225 because she is an applicant for admission, seeking admission, and she is not clearly and beyond a doubt entitled to be admitted. (Resp., ECF No. 5, PageID.20.) Respondents further argue that any "unadmitted" noncitizen is an "'applicant[] for admission' regardless of their proximity to the border, the length of time they have been present in the United States, or whether they ever had the subjective intent to properly apply for admission." (*Id.*) They explain that the INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." (*Id.*, PageID.21 (quoting 8 U.S.C. § 1101(a)(13)).) Petitioner claims that § 1226(a) "is the default provision governing discretionary detention of noncitizens 'already in the United States.'" (Reply, ECF No. 6, PageID.42 (citing *Jennings*, 583 U.S. at 303).)

---

[1] Subsection (c) refers to the "[d]etention of criminal aliens," which does not apply here. *See* 8 U.S.C. § 1226(c).

"A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see Corey v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022 (noting how courts "must give effect to the clear meaning of statutes as written"). When engaging in statutory interpretation, the Court's "inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)). However, ambiguity is not determined by examining provisions in isolation. "[T]he 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). This Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enter.*, 603 U.S. at 400. Examining the statute as a whole, in line with the guiding principles of statutory construction, this Court agrees with the numerous other courts in the country that have concluded that Respondents' interpretation of the statute is too broad.

Respondents contend that Petitioner is detained pursuant to § 1225 because she is an applicant for admission. (Resp., ECF No. 5, PageID.20.) As explained above, § 1225 defines an "applicant for admission" as any noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). Therefore, based on a plain reading of this limited phrase, any noncitizen who has not been legally allowed to enter is treated under § 1225 as an "applicant for admission."

However, although the terms of § 1225 may seem unambiguous when viewed in isolation, context matters. *Yates v. United States*, 574 U.S. 528, 537 (2015) (emphasizing the importance of context even when a statutory term is unambiguous). As noted above, § 1225(b)(2) provides that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A) (emphasis added). Respondents' reading of § 1225 would render the remaining qualifier of "an alien seeking admission" entirely unnecessary.

> That is, rather than stating that mandatory detention is required for any "applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted," the statute would instead provide for mandatory detention for any "applicant for admission, if the examining immigration officer determines that [the] alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted."

*Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) (strikethrough text in original) (quoting 8 U.S.C. § 1225(b)(2)(A)). "It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). Given Congress' decision to use different terms—"applicant for admission" and "alien seeking admission"—the Court will presume that Congress intended to mean different things. *See Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, . . . different terms usually have different meanings."). Therefore, in examining the text of § 1225, the Court must also examine the meaning of the phrase: seeking admission. The question remains: is a noncitizen who already entered the United States unlawfully but seeks to stay "seeking admission"?

9

The plain, ordinary meaning of "seeking" means "asking for" or *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/seeking (last visited Nov. 6, 2025). It is a present participle, which "necessarily implies some sort of present-tense action." *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025) The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). However, "entry," is not defined in the INA. *See generally id.* § 1101. The dictionary defines "entry" as "the right or privilege of entering" or "the act of entering." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/entry (last visited Nov. 6, 2025). "Entry" has long been understood to mean "a crossing into the territorial limits of the United States." *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010) (quoting *Matter of Pierre,* 14 I & N Dec. 467, 468 (BIA 1973)).

However, Petitioner is not actively seeking to lawfully cross into the territorial limits of the United States because she already *entered* the United States nearly two years ago, in December 2023, and remained here after being conditionally paroled for a year. As *Lopez Benitez* noted:

> [S]omeone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for more than two years.

*Lopez Benitez*, 2025 WL 2371588, at *7; *see also Lopez-Campos*, 2025 WL 2496379, at *6 ("'[S]eeking admission' implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.").

10

Indeed, § 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." A title such as this "is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest." *Yates*, 574 U.S. at 552 (Alito, J., concurring in judgment). Congress' decision to include the word "arriving," as well as the decision to include references to methods of physical arrival, such as "stowaways" and as "crewmen" evidences an intent to address noncitizens coming to the United States—whether on one side of the border or the other—and who are presently "seeking admission" into the United States. *Pizarro Reyes*, 2025 WL 2609425, at *5 (citing *Dubin v. United States*, 599 U.S. 110, 118 (2023)). The Supreme Court has recognized this distinction: that § 1225 applies to noncitizens when they arrive at the border or when they enter illegally and are caught very close to the border, and § 1226 applies to noncitizens who successfully have entered the United States—whether legally or illegally. *See, e.g.*, *Jennings*, 583 U.S. at 289 ("In sum, U.S. immigration law authorizes the [g]overnment to detain certain [noncitizens] *seeking admission into* the country under §§ 1225(b)(1) and (b)(2). It also authorizes the [g]overnment to detain certain [noncitizens] *already in the country* pending the outcome of removal proceedings under § 1226(a) and (c)." (emphasis added)).

Furthermore, Respondents' interpretation urges this Court to turn a blind eye to the remainder of the statutory scheme. Courts are instructed to "construe statutes, not isolated provisions." *King*, 576 U.S. at 486. Whereas § 1225 governs the treatment of "arriving aliens," § 1226 is much broader, referring to all other aliens not lawfully present but not arriving. To read § 1226 otherwise would ignore recent amendments to § 1226 and render Congress' recent actions entirely superfluous, a result that this Court has long been instructed to avoid. *See TRW Inc.*, 534 U.S. at 31.

Just this year, Congress enacted the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025), which amended § 1226 to prescribe a subset of noncitizens who are exempt from the discretionary bond analysis. Specifically, the Act added a subsection that explicitly mandates detention for those noncitizens who are inadmissible under §§ 1182(a)(6)(A), 1182(a)(6)(C), and 1182(a)(7), *and* who have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Notably, § 1182(a)(6)(A) refers to "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General . . .", in other words, someone like Petitioner. If all individuals like Petitioner, "present in the United States without being admitted or paroled," were already subject to mandatory detention under § 1225, then there would have been no need for Congress to amend the INA to provide for mandatory detention of individuals who were "present in the United States without being admitted or paroled" *and* who were arrested, charged with, or committed certain crimes. Quite simply, were the Court to agree with Respondents' interpretation of §§ 1225 and 1226, the Court would be nullifying Congress's intent and rendering § 1226(c)(1)(E) entirely superfluous. *See Corey*, 556 U.S. at 314 ("A statute should be construed so that effect is given to all its provisions.").

In sum, the Court concludes that § 1226(a), and not § 1225(b)(2)(A), governs noncitizens, such as Petitioner, who have resided in the United States and were already present within the United States without being admitted or paroled at the time that they were apprehended.[2]

---

[2] This Court has recently reached the same conclusion in several other habeas corpus actions filed by detainees at the North Lake Processing Center. *See Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL 3039266, at *5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025 WL 3039255, at *5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025 WL 3017200, at *5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v.*

B.     **Fifth Amendment Due Process Considerations**

The Supreme Court has held that "[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 682. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Id.* at 690. The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025). This includes noncitizens, like Petitioner. *See id.*; *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 269 (1990); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *4 (6th Cir. Jan. 18, 2023).

If this Court agreed with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A), then the Government's due process argument might carry more weight. However,

---

*Noem*, No. 1:25-cv-1196, 2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*, No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *6 (W.D. Mich. Oct. 17, 2025). Moreover, this Court is far from the first federal district court to reach this conclusion. *See, e.g.*, *Lopez-Campos*, 2025 WL 2496379, at *8; *see also Rodriguez*, 779 F. Supp. 3d at 1256–61; *Singh v. Lewis*, No. 4:25-cv-96-RGJ, 2025 WL 2699219, at *3–5 (W.D. Ky. Sept. 22, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7–12 (W.D. Tex. Sept. 22, 2025); *Campos Leon v. Forestal*, 1:25-cv-1774-SEB-MJD, 2025 WL 2694763, at *2–5 (S.D. Ind. Sept. 22, 2025); *Hasan v. Crawford*, No. 1:25-cv-1408 (LMB/IDD), 2025 WL 2682255, at *5–9 (E.D. Va. Sept. 19, 2025); *Garcia Cortes v. Noem*, No. 1:25-cv-2677-CNS, 2025 WL 2652880, at *2–3 (D. Colo. Sept. 16, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136, at *2–4 (W.D. La. Aug. 27, 2025); *Romero v. Hyde*, No. 1:25-cv-11631-BEM, 2025 WL 2403827, at *8–13 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411, at *9–16 (D. Minn. Aug. 15, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *6–9 (D. Mass. Aug. 14, 2025); *Lopez Benitez v. Francis*, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *3–9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 2:25-cv-02157-DLR, 2025 WL 2337099, at *6–11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *6–8 (D. Mass. July 7, 2025). This is just a representative sampling of the various federal district courts that have reached the same conclusion as this Court.

as set forth above, this Court does not agree with Respondents that Petitioner's detention is governed by § 1225(b)(2)(A). Instead, Petitioner's detention is governed by § 1226(a). Section 1226(a) clearly sets forth a discretionary framework for detention or release of an alien subject to that provision. The statute explicitly allows the Attorney General to continue to detain the arrested noncitizen or release the noncitizen with either "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General," or "conditional parole." *See* 8 U.S.C. § 1226(a)(1), (2). This discretionary framework "requires a bond hearing to make an individualized custody determination." *See Lopez-Campos*, 2025 WL 2496379, at *9.

The Sixth Circuit has held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (applying the *Matthews v. Eldridge* test in the context of immigration). *Matthews v. Eldridge* requires a court to consider the following three factors: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

### 1. Private Interest

Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *See Hamdi*, 542 U.S. at 529. The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, No. 25-CV-01151 (JMB/DLM), 2025 WL 1459154 at *7 (D. Minn. May 21, 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)).

Respondents do not claim that the conditions of Petitioner's confinement at North Lake differ in any material way from criminal incarceration. Detained away from her family and community, Petitioner is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 2025 WL 1459154 at *7. Petitioner, through counsel, represents that she is the mother of an 11-year-old son and acts as her son's sole provider. (Pet., ECF No. 1, PageID.4.) Therefore, the "private interest" factor strongly weighs in favor of Petitioner.

### 2. Risk of Error

Likewise, the second *Mathews* factor weighs in Petitioner's favor. An individualized bond hearing ensures that an immigration judge can assess whether Petitioner poses a flight risk or a danger to the community, reducing the risk that Petitioner will suffer an "erroneous deprivation" of her rights. *See Lopez-Campos*, 2025 WL 2496379, at *9.

### 3. Respondents' Competing Interests and Burdens of Additional or Substitute Procedures

Lastly, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025). However, given the record available to the Court, Respondents have not established a significant interest in potentially "detaining someone who [could convince] a neutral adjudicator, following a hearing and assessment of the evidence, that [her] ongoing detention is not warranted." *See id.* Furthermore, Respondents have not established that an individualized hearing would pose "administrative or financial costs" in this case—"[t]o the contrary," Respondents' position "requires the government to continue funding and overseeing [Petitioner's] detention[.]" *See id.*

15

In sum, the Court's balancing of the *Matthews v. Eldridge* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b)(2)(A) violates Petitioner's Fifth Amendment due process rights.

**V.     Proper Respondents**

Respondents argue that the Acting Detroit ICE Field Office Director, Petitioner's immediate custodian, is the only proper Respondent. (Resp., ECF No. 5, PageID.33.) They request that the Court dismiss the remaining named Respondents because they are not Petitioner's custodians within the meaning of 28 U.S.C. § 2243. (*Id.*)

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Braden v. 30th Jud. Circuit Ct. of Ky.*, 410 U.S. 494–95 (1973). Thus,

> [r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, even if the prisoner himself is confined outside the court's territorial jurisdiction.

*Id.* at 495.

The Sixth Circuit has "conclude[d] that a detained alien generally must designate his immediate custodian—the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman v. Ashcroft*, 340 F.3d 314, 322 (6th Cir. 2003). Here, Petitioner has named Petitioner's immediate custodian, the Director of the Detroit Field Office of ICE, as a Respondent. (Pet., ECF No. 1, PageID.3.)

16

In *Roman*, the Sixth Circuit stated that while it "conclude[d] that the immediate custodian rule generally applies to alien habeas corpus petitioners, [there is] the possibility of exceptions to this rule." *Roman*, 340 F.3d at 322. The *Roman* court went on to note:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez–Rivas*[ *v. Olsen*], 194 F. Supp. 2d [368,] 374 [(D.N.J. 2002)]. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft,* 216 F. Supp. 2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."); Rosenbloom, *supra,* at 549. In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias–Agramonte*[ *v. Comm'r*], [No. 00 CIV 2412 (RWS),] 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Id.* at 325–26. Thus, the Sixth Circuit concluded, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326.

Considering the foregoing, the Court recognizes the need to ensure that Respondents maintain authority to enforce this Court's grant of habeas relief and directive that Petitioner receive a bond hearing or, alternatively, be released in the event that Petitioner is transferred out of the Western District of Michigan. The Court, therefore, will not dismiss Secretary Noem as a Respondent to these proceedings. The Court will, however, dismiss the United States Attorney General Pamela Bondi and Unknown Party #1 named as the Warden of North Lake as Respondents.

## Conclusion

For the reasons discussed above, the Court will enter a Judgment conditionally granting Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The

Court will order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's Opinion and accompanying Judgment or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondents to file a status report within six business days of the date of this Court's Opinion and accompanying Judgment to certify compliance with this Opinion. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial.

Dated:   November 17, 2025                        /s/ Jane M. Beckering
                                                                                  Jane M. Beckering
                                                                                  United States District Judge